Ray GONZALEZ, Appellant,

v.

The STATE of Texas.

No. PD–0247–05.

Court of Criminal Appeals of Texas.

June 21, 2006.

Julie B. Pollock, San Antonio, for Appellant.

Enrico B. Valdez, Assistant District Atty., San Antonio, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

The question presented in this case of first impression is whether appellant forfeited, by his own misconduct of fatally shooting Maria Herrera during a robbery

or the burglary of her home, his right to confront Maria in court about hearsay statements she made before she died.[1] We find that he did, and we therefore affirm the judgment of the court of appeals which held the same.[2]

## I.

San Antonio police officers, responding to 911 calls, arrived at Maria and Baldomero Herrera's home shortly after 6:00 p.m. on May 3, 2002, and found that both of them had been shot. Maria lay near the front door. She was in shock, scared and bleeding, but she was still conscious and asking for help. Baldomero was sprawled unconscious in an easy chair. When officers asked her what had happened, Maria excitedly said that she and her husband had been shot by "a Latin male, blondish colored hair, and he was about 18 years old." She said "the person that did it is related to the people that live across the street in the rock house." Maria kept repeating that he had colored or bleached hair. She stated "that the guy that shot her took her truck" and "she had recognized him from—from the house across the street that had a rock wall in front of it." Maria said it was "just one person." Baldomero died at their home; Maria died at the hospital a few hours later.

Officers found the license plate number of the Herreras' new white Nissan truck and broadcast it over the police radio. There was only one house with a rock face across the street; appellant's grandmother lived there. Appellant's aunt had left him there earlier in the day. His hair was spiky and blonde on top.

Around 6:00 p.m., appellant arrived at his cousin's apartment in the Herreras' truck. According to Sylvia Flores, appellant's cousin, he arrived alone. When Sylvia asked him where he got the truck, appellant said that he got it from selling drugs. Sometime later, appellant's brother and his brother's wife arrived in their Ford truck.

While appellant was at Sylvia's apartment, a police officer on routine patrol, who had heard the broadcast about the Herreras' stolen truck, saw it parked at Sylvia's apartment complex. He radioed for assistance, and undercover officers in unmarked cars soon arrived and set up surveillance. Around 7:45 p.m., undercover officers noticed a "bleach blonde Latin," later identified as appellant, and another male walk out to the truck, then they both went back inside. At 9:20 p.m., three people, including appellant, came out of the apartment.

Appellant got into the Herreras' Nissan; the other two people got into the Ford truck. The Nissan then followed the Ford out of the apartment complex. When the SWAT officers followed behind him, appellant raced off in the stolen truck, leading officers on a sometimes high-speed chase that lasted about 15 minutes. Eventually, appellant drove down a one-way street and was blocked in by police cars. Appellant refused to get out of the truck, so he was pulled out, handcuffed, and searched. Officers found a black address book, containing Baldomero's credit cards, in his pocket. Appellant was taken to jail and his clothes, a white shirt, jeans and tennis shoes, were collected. Maria's blood was found on the tennis shoes.

---

1. Appellant's sole issue is
   Whether the Court of Appeals erred in holding that the Petitioner forfeited his right of confrontation under the doctrine of "forfeiture by wrongdoing."

2. *Gonzalez v. State,* 155 S.W.3d 603 (Tex. App.-San Antonio 2004).

The medical examiner testified that Baldomero died from a single gunshot wound to the chest; Maria, who had been shot from three to five times, died from a gunshot wound to the abdomen.

Appellant was charged with capital murder. In a motion *in limine,* and again at trial, appellant objected to the admission of Maria's statements to the police officers as hearsay and as violating his confrontation rights. The trial court held a hearing outside the presence of the jury to determine if Maria's statements to three different officers were admissible. The State argued that Maria's statements, though hearsay, were admissible under the excited utterance and dying declaration exceptions. Appellant argued that the statements were not dying declarations; he pointed to the officers' testimony that Maria was not aware of the gravity of her condition. He also argued that her statements were not excited utterances because they were not spontaneous; instead, they were answers to police questions. The trial judge doubted that the statements were dying declarations, but he admitted them "mainly under the excited utterance" exception, noting that they also fell under the hearsay exceptions for present-sense impression and then-existing physical condition. The jury convicted appellant of capital murder and sentenced him to life imprisonment.

One of appellant's claims on appeal was that the admission of Maria's out-of-court "testimonial" statements violated his right to confrontation under *Crawford v. Wash-*

*ington,*[3] which the Supreme Court had delivered during the pendency of his appeal. The court of appeals held that Maria's statements were excited utterances and decided that it need not resolve whether they were also testimonial because appellant had forfeited his right to confrontation under the doctrine of forfeiture by wrongdoing.[4] Noting that the Supreme Court had stated in *Crawford* that it would continue to recognize the doctrine of forfeiture by wrongdoing, which "extinguishes confrontation claims on essentially equitable grounds," the court of appeals held that "Gonzalez is precluded from objecting to the introduction of Maria's statements on Confrontation Clause grounds because it was his own criminal conduct (in this case, murder) that rendered Maria unavailable for cross-examination."[5]

## II.

In all criminal prosecutions, the accused has a Sixth Amendment right to be confronted with the witnesses against him. Even when hearsay offered against a defendant is admissible under evidentiary rules, that evidence may implicate the Confrontation Clause of the Sixth Amendment if the defendant is not afforded the opportunity to confront the out-of-court declarant.[6] In *Crawford v. Washington,* the Supreme Court held that "where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: Confronta-

**3.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**4.** *Gonzalez,* 155 S.W.3d at 610. In a footnote, the court expressed doubt that the statements Maria made to the investigating officers could be classified as "testimonial" because "[a]n unstructured interaction between an officer and witness shortly after a distressing event has occurred, like that which occurred here,

simply does not fit within a lay conception of 'interrogation.' " *Id.* at n. 4 (citations omitted).

**5.** *Id.*

**6.** *Shuffield v. State,* 189 S.W.3d 782, 790-91 (Tex.Crim.App., 2006).

tion."[7] Nevertheless, the Supreme Court recognized that equitable exceptions to the Confrontation Clause may still apply, and it specifically mentioned the doctrine of forfeiture by wrongdoing which "extinguishes confrontation claims on essentially equitable grounds" as one that it accepts.[8]

■ The doctrine of forfeiture by wrongdoing has been a part of the common law since at least 1666.[9] In early English cases, the doctrine allowed a witness's deposition testimony to be admitted instead of live testimony if the defendant caused the witness's absence from trial.[10] The doctrine is based on the principle that "any tampering with a witness should once for all estop the tamperer from making any objection based on the results of his own chicanery."[11] In other words, the rule is based on "common honesty" and the maxim that "no one shall be permitted to take advantage of his own wrong."[12]

The Supreme Court first applied the doctrine of forfeiture by wrongdoing over a century ago in *Reynolds v. United States*.[13] Reynolds was on trial for bigamy. The prosecution offered the prior testimony of Reynolds's second wife when it was unable to subpoena her because Reynolds refused to reveal her location.[14] Reynolds claimed that the admission of her former testimony violated his Sixth Amendment rights, but the Supreme Court held that Reynolds's wrongful act of hiding his wife away from trial trumped his right of confrontation:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does

---

7. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354.

8. *Id.* at 62, 124 S.Ct. 1354; *see Reynolds v. United States*, 98 U.S. 145, 158–59, 25 L.Ed. 244 (1879).

9. In *Reynolds*, the Supreme Court stated that as long ago as the year 1666, it was resolved in the House of Lords "that in case oath should be made that any witness, who had been examined by the coroner and was then absent, was detained by the means or procurement of the prisoner, and the opinion of the judges asked whether such examination might be read, we should answer, that if their lordships were satisfied by the evidence they had heard that the witness was detained by means or procurement of the prisoner, then the examination might be read; but whether he was detained by means or procurement of the prisoner was matter of fact, of which we were not the judges, but their lordships." 98 U.S. at 158.

10. *Lord Morley's Case*, 6 State Trials 769 (1666); *Harrison's Case*, 12 State Trials 851 (1692) (depositions taken before coroner admissible when trial judge rules that defendant had attempted to bribe or "spirit away" two

witnesses). As appellant points out, however, "[t]hese early cases applying the 'rule of forfeiture by wrongdoing' dealt only with the admission of a prior deposition or prior trial testimony, and involved post-crime attempts by the defendant, or those acting on his behalf, to prevent the testimony of the witness at a pending criminal trial." Appellant's Brief at 10.

11. 5 John H. Wigmore, Evidence § 1406 at 219 (Chadbourn rev.1974).

12. *Reynolds*, 98 U.S. at 159, 8 Otto 145.

13. 98 U.S. 145, 25 L.Ed. 244 (1879).

14. A deputy sheriff testified that he had repeatedly attempted to subpoena the second wife at her marital home, but that the defendant had repeatedly told him that she was not at home, he refused to tell the deputy where she was, and informed him that she was not going to appear at trial. 98 U.S. at 159–60, 8 Otto 145. The inference that both the trial court and the Supreme Court drew was that he had spirited her away so that she could not testify against him. *Id.*

not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.[15]

Several early Texas cases referenced or followed the rule in *Reynolds*.[16]

Because of witness tampering in organized-crime prosecutions during the 1970's, several federal courts of appeals either followed *Reynolds* or expanded the forfeiture doctrine.[17] The doctrine was applied when a defendant intimidated, bribed, or killed a witness to keep him from testifying about a prior crime, and it was used to admit more than just former testimony or depositions; it also allowed the admission of statements made to police by cooperating witnesses who were killed before trial. The rule "operated as a disincentive to keep organized crime affiliates from 'knocking off' witnesses."[18]

In 1997, the "forfeiture by wrongdoing" doctrine was codified in the Federal Rules

---

**15.** *Id.* at 158, 8 Otto 145. As pointed out by appellant, the " 'competent evidence' to which the Court referred was prior testimony of a witness whom the defendant had a full opportunity to confront at an earlier trial." Appellant's Brief at 12.

**16.** *Reynolds* was mentioned in a dissenting opinion in *Hobbs v. State*, 53 Tex.Crim. 71, 112 S.W. 308 (1908) (on rehearing). In that case Presiding Judge Davidson disagreed with the majority's conclusion that the inquest testimony of the absent witnesses was admissible even though there was no evidence that the witnesses were absent because of the "suggestion, procurement or act of the accused." 53 Tex.Crim. at 90, 112 S.W. at 319. Judge Davidson quoted from *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900). In *Motes*, the Supreme Court found a Confrontation Clause violation because "there was not the slightest ground in the evidence to suppose that [the witness] had absented himself from the trial at the instance, by the procurement or with the assent of either of the accused." *Motes*, 178 U.S. at 473–74, 20 S.Ct. 993.

The rule in *Reynolds* was applied in *Colbert v. State*, 119 Tex.Crim. 394, 397, 43 S.W.2d 1099, 1100 (1931) (op. on reh'g). Colbert was convicted of murder; his conviction was reversed, and he was tried again. At the second trial, the trial judge admitted the former testimony of a witness who had, in the meantime, absconded to New Mexico. "A subpoena issued to El Paso County, Texas, and the witness was located in New Mexico and was to go to El Paso to be subpoenaed. Money was forwarded to the witness, who refused to go to El Paso and answered by Western Union that he had been robbed and did not have the money." 119 Tex.Crim. at 395, 43 S.W.2d at 1100. Because this Court cited *Reynolds*, the defendant presumably had something to do with the witness's refusal to go to El Paso. *See also Smith v. State*, 66 Tex.Crim. 593, 598, 148 S.W. 722, 724 (1912) (citing *Reynolds* ).

**17.** *See, e.g., United States v. Carlson*, 547 F.2d 1346, 1359 (8th Cir.1976); *United States v. Balano*, 618 F.2d 624, 629 (10th Cir.1979); *United States v. Thevis*, 665 F.2d 616, 630 (5th Cir.1982); *United States v. Mastrangelo*, 693 F.2d 269, 272 (2d Cir.1982); *Steele v. Taylor*, 684 F.2d 1193, 1201–03 (6th Cir.1982); *United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992); *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir.1996); *United States v. White*, 116 F.3d 903, 911–12 (D.C.Cir.1997); *United States v. Johnson*, 219 F.3d 349, 355 (4th Cir.2000); *United States v. Scott*, 284 F.3d 758, 762–64 (7th Cir.2002). *See also* John R. Kroger, *The Confrontation Waiver Rule*, 76 B.U.L.Rev. 835, 835–89 (1996) (discussing *United States v. Houlihan* and describing the "Charlestown Code of Silence" which, for years, protected the violent Charlestown drug ring).

**18.** Joshua Deahl, *Expanding Forfeiture Without Sacrificing Confrontation After* Crawford, 104 Mich. L.Rev. 599, 601 (2005).

of Evidence as a hearsay exception.[19] By that time every circuit that had addressed the issue had recognized the doctrine of forfeiture by misconduct.[20] The doctrine was added to Rule 804 to clarify that a party forfeits the right to object, on hearsay grounds, to the admission of a declarant's prior statement when that party's deliberate wrongdoing procured the unavailability of the declarant as a witness.[21] As the advisory committee note explained:

> The most obvious situation for employing this exception is where a criminal defendant kills a witness, or has him killed, to prevent him from testifying; by engaging in this conduct, the defendant has forfeited the right to object on hearsay grounds to any of the victim's statements. The Rule was derived from cases that have held that a criminal defendant forfeits his right to confrontation if he causes or acquiesces in the witness' unavailability. If the defendant's conduct is such as to cause a forfeiture of the constitutional objection, it should *a fortiori* be enough to cause a forfeiture of the parallel hearsay objection.[22]

Before the Rule 804(b)(6) hearsay exception can apply, the offering party must show that the opposing party committed the wrongdoing with the intent to prevent the declarant's testimony:

> Under the Rule, it must be shown that the party against whom the evidence is offered acted with intent to procure the unavailability of the declarant as a witness. If the defendant kills a declarant simply because he didn't like him, or because he was burned in a drug deal by him, then the defendant has not forfeited his right to object to the declarant's hearsay statement. It follows that the defendant in a murder case cannot be held to have forfeited his objection to hearsay statements made by the victim. The defendant might have murdered the victim, but he undoubtedly didn't murder the victim to prevent him from testifying in the murder trial.[23]

Some version of the forfeiture doctrine has been adopted in various state courts.[24] While courts have widely accepted the doctrine of forfeiture by wrongdoing to reject both hearsay objections and confrontation claims, the test for determining whether

---

19. FED.R.EVID. 804(b)(6) ("The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.... A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.").

20. FED.R.EVID. 804, Notes of Advisory Committee on 1997 amendments ("Every circuit that has resolved the question has recognized the principle of forfeiture by misconduct, although the tests for determining whether there is a forfeiture have varied") (citing *United States v. Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992); *United States v. Potamitis*, 739 F.2d 784, 789 (2d Cir.1984); *Steele v. Taylor*, 684 F.2d 1193, 1199 (6th Cir.1982); *United States v. Balano*, 618 F.2d 624, 629 (10th Cir.1979); *United States v. Carlson*, 547 F.2d 1346, 1358–59 (8th Cir.1977); *United States v. Thevis*, 665 F.2d 616, 631 (5th Cir.1982)).

21. FED.R.EVID. 804, Notes of Advisory Committee on 1997 amendments.

22. FED.R.EVID. 804, COMMENTARY Stephen A. Saltzburg, Daniel J. Capra, and Michael M. Martin.

23. *Id.*

24. *See, e.g., State v. Gettings*, 244 Kan. 236, 769 P.2d 25, 28 (1989); *State v. Valencia*, 186 Ariz. 493, 924 P.2d 497, 502 (1996); *State v. Hallum*, 606 N.W.2d 351, 354–56 (Iowa 2000); *State v. Magouirk*, 539 So.2d 50, 64–65 (La.Ct.App.1988); *State v. Black*, 291 N.W.2d 208, 214 (Minn.1980); *State v. Sheppard*, 197 N.J.Super. 411, 484 A.2d 1330, 1345–47 (Law Div.1984); *Holtzman v. Hellenbrand*, 92 A.D.2d 405, 412–14, 460 N.Y.S.2d 591 (N.Y.App.Div.1983).

there is a forfeiture has varied. Courts have agreed that forfeiture requires (1) the declarant's unavailability, (2) as a result of the defendant's act of misconduct. Courts have disagreed on whether the defendant must intend that his act of misconduct silence the witness.[25] Courts also have disagreed on whether evidence inadmissible under Federal Rule 804(b)(6) (i.e. when the predicate wrongdoing is the same crime for which the defendant is being tried) might nonetheless be admissible over a confrontation clause objection under the forfeiture doctrine.[26]

This debate has taken on new life since the *Crawford* decision.[27] Several courts

25. *See* John R. Kroger, *The Confrontation Waiver Rule*, 76 B.U.L.Rev. 835, 854, 875–77 (1996) (noting that the majority rule required a showing of 1) declarant unavailability and 2) procurement of the declarant's unavailability by the defendant; minority rule required, in addition, 3) proof that the defendant causes a witness to be unavailable for trial for the purposes of preventing that witness from testifying). Professor Kroger argued that the majority rule was insufficient to protect a defendant's rights:

> The majority test, with its two sole elements of unavailability and cause, is clearly insufficient [because] it requires no analysis of the defendant's state of mind to ensure that the waiver was intentional. The majority test simply turns the clock back to 1878, imputing a waiver to the defendant on the basis of his conduct, regardless of intent or purpose.... The three-part test applied by the First and Fifth Circuits is a major improvement over the majority test. The purpose or intent element of the test forces a court to analyze the defendant's state of mind to ensure that the defendant truly intended to forgo confrontation of the witness at trial.

*Id.* (footnotes omitted).

26. *See United States v. Emery*, 186 F.3d 921, 926 (8th Cir.1999) (applying doctrine of forfeiture by wrongdoing to statements of a federal informant after finding, by a preponderance of the evidence, that the defendant was responsible for the informant's murder). In *Emery*, the court rejected the defendant's contention that the doctrine applies only in a trial on the underlying crimes about which the declarant would have testified, not in a trial for murdering the declarant:

> We believe that both the plain meaning of Fed.R.Evid. 804(b)(6) and the manifest object of the [forfeiture] principles just outlined mandate a different result. The rule contains no limitation on the subject matter of the statements that it exempts from the prohibition on hearsay evidence. Instead, it establishes the general proposition that a defendant may not benefit from his or her wrongful prevention of future testimony from a witness or potential witness. Accepting Mr. Emery's position would allow him to do just that.

*Id. Compare United States v. Lentz*, 282 F.Supp.2d 399 (E.D.Va.2002), in which the district court declined to apply the forfeiture rule to some out-of-court statements made by Ms. Lentz, the victim:

> Essentially, the Government asks the Court to find Defendant guilty of killing Ms. Lentz by a preponderance of the evidence in order to allow the evidence to be admitted to prove Defendant killed Ms. Lentz beyond a reasonable doubt. No case cited by the Government stands for this proposition. In this case for which Defendant is being tried under well settled Constitutional principles, Defendant is presumed to be innocent until proven guilty. To hold otherwise would be to deprive a defendant of his right to a jury trial and allow for a judge to preliminarily convict a defendant of the crime on which he was charged. This Court is unwilling to extend the reasoning in Rule 804(b)(6) to allow in the testimony of a decedent victim for whose death a defendant is on trial.

*Id.* at 426.

27. On June 19, 2006, the Supreme Court reiterated the vitality of the doctrine of forfeiture by wrongdoing as an exception to the right of confrontation in *Davis v. Washington*, —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (reiterating *Crawford* statement that doctrine of forfeiture by wrongdoing extinguishes confrontation claims on equitable grounds and noting that "when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in

have used the language in *Crawford* to apply the forfeiture doctrine expansively— when the wrongdoing is the same crime for which the defendant is being tried and without regard to whether the defendant intended to silence the witness.[28] Other courts have held that the forfeiture doctrine does not apply in those situations because (1) the defendant's wrongdoing only indirectly "procured" the witness's absence; (2) the wrongful act was not done with the intent to prevent the witness from testifying; or (3) it is the same wrongful act for which the defendant is on trial.[29]

In *United States v. Mayhew*,[30] the district court cited to the amicus brief filed by a group of law school professors in *Crawford* to apply the forfeiture doctrine even though the defendant was on trial for the very act of murder that caused the declarant's unavailability.[31] In their brief, the professors did not mention the role of the wrongdoer's intent. They simply stated,

> If the trial court determines as a threshold matter that the reason the victim cannot testify at trial is that the accused murdered her, then the accused should be deemed to have forfeited the confrontation right, even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable.[32]

---

proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system.").

**28.** *See generally*, Joshua Deahl, *Expanding Forfeiture Without Sacrificing Confrontation After* Crawford, 104 MICH. L.REV. 599 (2005); Jerome C. Latimer, *Confrontation After* Crawford: *The Decision's Impact on How Hearsay Is Analyzed Under the Confrontation Clause*, 36 SETON HALL L.REV. 327 (2006).

**29.** *See* note 28.

**30.** 380 F.Supp.2d 961 (S.D.Ohio 2005). In *Mayhew*, the evidence showed that the defendant shot and killed his ex-girlfriend and her fiancé, then kidnapped his daughter, Kristina. He drove Kristina to West Virginia where, two days later, he was stopped by a West Virginia state trooper for a traffic offense. When the officer approached the car, Mayhew drew a gun and shot him. After a chase that ended at a roadblock, the defendant, still in his car, shot Kristina twice, then shot himself in the chest. Kristina was taken to the nearest hospital, but died shortly thereafter. She gave the police a recorded statement before she died, and the trial court admitted it over the defendant's Confrontation Clause objection. *Id.* at 963.

**31.** *Id.* at 967–68.

**32.** *See Crawford v. Washington*, Brief Amicus Curiae of Law Professors Sherman J. Clark, James J. Duane, Richard D. Friedman, Norman Garland, Gary M. Maveal, Bridget McCormack, David A. Moran, Christopher B. Mueller, and Roger C. Park, in Support of Petitioner, No. 02–9410, 2002 U.S. Briefs 9410 (July 24, 2003). The professors discussed forfeiture in the following passages:

> Like the right to counsel and the right to a jury trial, the right to confront witnesses is subject to waiver, and it is also subject to forfeiture, for the accused has no ground to complain if his own wrongdoing caused his inability to confront the witness. Like those other rights, the right to confront adverse witnesses can and should be applied unequivocally. That is, if the statement is a testimonial one and the right has not been waived or forfeited, then the right should apply without exceptions. This simple approach is possible because the scope of the right, properly conceived, is quite narrow. It does not reach out-of-court statements in general, but only those that are testimonial in nature.
>
> . . .
>
> If the accused will not have had an adequate opportunity to confront the witness, then introduction of the testimonial statement to prove the truth of what it asserts violates the accused's confrontation right unless the answer to the third question is in the affirmative: Did the accused waive the right to confrontation by failing to object, or forfeit it by misconduct? The accused might forfeit the right, for example, by intimidating the witness, kidnaping her, or murdering her. An accused cannot complain about his inability to confront the

*Mayhew* also relied on *United States v. Garcia–Meza*,[33] a case in which the Sixth Circuit held that the government need not show that "the defendant purposefully procured a witness's absence" before the forfeiture doctrine applies. In that case, the defendant was on trial for stabbing his wife to death. At trial, the government offered statements that she had made to the police after an earlier beating but before the fatal stabbing. The defendant objected, arguing that admission of these statements violated his Confrontation rights because he had not had an opportunity to cross-examine her. He further argued that the forfeiture doctrine was not applicable because he had not killed his wife with the intent to prevent her from testifying. The Sixth Circuit held that the motive behind the defendant's wrongdoing was irrelevant. It explained that the equitable basis of the forfeiture doctrine, as set out in *Crawford*, prevented the defendant from benefiting in any way from his wrongdoing:

> The Defendant ... argues that for the rule of forfeiture to apply, a defendant must have killed or otherwise prevented the witness from testifying with the specific intent to prevent her from testifying. Since he did not kill her with the

specific intent to prevent her from testifying, the Defendant argues, he should not be found to have forfeited his right to confront her. There is no requirement that a defendant who prevents a witness from testifying against him through his own wrongdoing only forfeits his right to confront the witness where, in procuring the witness's unavailability, he intended to prevent the witness from testifying. Though the Federal Rules of Evidence may contain such a requirement, see Fed.R.Evid. 804(b)(6), the right secured by the Sixth Amendment does not depend on, in the recent words of the Supreme Court, "the vagaries of the Rules of Evidence." *Crawford*, 124 S.Ct. at 1370. The Supreme Court's recent affirmation of the "essentially equitable grounds" for the rule of forfeiture strongly suggests that the rule's applicability does not hinge on the wrongdoer's motive. The Defendant, regardless of whether he intended to prevent the witness from testifying against him or not, would benefit through his own wrongdoing if such a witness's statements could not be used against him, which the rule of forfeiture, based on principles of equity, does not permit.[34]

---

witness if it is his own wrongful conduct that created that inability. This principle—rather than the fiction that cross-examination would be practically useless anyway because a declarant would not [want] to die with a lie on her lips—best explains the admissibility of certain statements by dying witnesses.

...

If the trial court determines as a threshold matter that the reason the victim cannot testify at trial is that the accused murdered her, then the accused should be deemed to have forfeited the confrontation right, even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable. Just as in *Bourjaily*, bootstrapping does not

pose a genuine problem. See Richard D. Friedman, *Confrontation and the Definition of Chutzpa*, 31 Israel L.Rev. 506 (1997). *Id.* at *3, 24 & n. 16.

**33.** 403 F.3d 364, 370–71 (6th Cir.2005).

**34.** *Garcia–Meza*, 403 F.3d at 370–71. *See also United States v. Johnson*, 354 F.Supp.2d 939, 964 (N.D.Iowa 2005) ("the *Emery* decision defeats Johnson's contention that the exception cannot apply unless the 'wrongdoing' upon which the exception is based is different from the 'wrongdoing' charged in the case, or there would be a 'murder victim's' exception."); *People v. Bauder*, 269 Mich.App. 174, 184–85, 712 N.W.2d 506 (Mich.App.2005) (adopting *Garcia–Meza* rationale and applying forfeiture rule to domestic-violence victim's

In the present case, the San Antonio Court of Appeals cited state-court decisions that have held the same, including the Kansas Supreme Court in *State v. Meeks*[35] as well as Colorado and California appellate courts in *State v. Moore*,[36] and

*People v. Giles.*[37] Some post-*Crawford* decisions have declined to apply the forfeiture doctrine when the defendant's actions did not directly cause the witness's absence or were not intended to make his testimony unavailable.[38] For example, in

out-of-court statements when defendant was on trial for murdering her).

35. 277 Kan. 609, 88 P.3d 789 (2004). *Meeks* involved a slight, which led to an argument, which led to a fight, which led to a death. At Meeks's murder trial, an officer testified that, when he arrived at the scene, he asked the victim, James Green, who shot him. Green said, "Meeks shot me." The defendant argued that the admission of the victim's statement violated his right to confront Green. The court held that, by killing Green, Meeks forfeited his right to confront him. The court had previously applied the forfeiture doctrine in *State v. Gettings*, 244 Kan. 236, 769 P.2d 25 (1989), a classic silencing-the-witness case. The court was not troubled by the seeming expansion of the doctrine in light of the law professors' amicus brief: "Although *Gettings* involved somewhat different facts from those of the instant case, in an amicus brief filed in *Crawford* by law professors ... in support of petitioner, the professors addressed our specific situation." *Id.* at 794.

36. *State v. Moore*, 117 P.3d 1 (Colo.App.2004). In *Moore,* the court held that when the 300–pound defendant sat on his wife, killing her, he forfeited his right to confront her about statements implicating him in a prior instance of domestic violence. The court relied on *Meeks* and stated that "a defendant is not to benefit from his or her wrongful prevention of future testimony from a witness, regardless whether that witness is the victim in the case." *Id.* at 5.

37. 123 Cal.App.4th 475, 19 Cal.Rptr.3d 843 (2004, pet.granted). In *Giles,* the trial court admitted hearsay statements by the murder victim about a prior act of domestic violence. The appellate court concluded that the defendant forfeited his Confrontation Clause arguments through his own wrongdoing. It rejected his argument that there was any problem with permitting the trial court to determine, as a predicate for admissibility of the evidence, that the defendant had committed the very crime for which he was be-

ing tried. Like other courts, the *Giles* court pointed to the doctrine's roots in equity: "This 'problem' does not undermine the equitable reasons for the forfeiture doctrine and does not present the trial court with any undue procedural difficulty." *Id.* at 485, 19 Cal.Rptr.3d 843. The California Supreme Court has granted review of this case on the following issues: "Did defendant forfeit his Confrontation Clause claim regarding admission of the victim's prior statements concerning an incident of domestic violence (see Evid.Code § 1370) under the doctrine of 'forfeiture by wrongdoing' because defendant killed the victim, thus rendering her unavailable to testify at trial? Does the doctrine apply where the alleged 'wrongdoing' is the same as the offense for which defendant was on trial?" *People v. Giles*, 22 Cal.Rptr.3d 548, 102 P.3d 930 (Cal.2004).

38. *See, e.g., State v. Alvarez–Lopez*, 136 N.M. 309, 314–15, 98 P.3d 699 (N.M.2004) (forfeiture doctrine did not apply when defendant's act of absconding and remaining a fugitive for seven years—during which time the witness was deported to Mexico—was not shown to be motivated by a desire to silence the witness and there was no causal connection between defendant's misconduct and witness's unavailability); *United States v. Jordan*, No. 04–CR–229–B, 2005 WL 513501, at *1, 2005 U.S. Dist. LEXIS 3289, *2 (D.Colo. March 3, 2005) (refusing to apply forfeiture doctrine in murder trial when inmate defendant was charged with stabbing a fellow inmate; before his death, victim said that "Mark Jordan struck me," and that the stabbing was "over drug debts. Jordan owes about two-thousand dollars for drugs"; district court held that, if government's position were adopted, the forfeiture doctrine would apply to every murder case; stating that doctrine applies only to those acts whose purpose is to prevent the testimony); *See also People v. Gilmore*, No. 258334, 2006 WL 744268, 2006 Mich.App. LEXIS 868 (Mich.Ct.App. March 23, 2006) (unpublished opinion) (holding that to apply the forfeiture doctrine in a situation in which

*People v. Melchor*,[39] the evidence showed that the defendant had intentionally absconded and engaged in an elaborate scheme to avoid the law for ten years, during which time the sole eyewitness to the shooting, Ortiz, died from a drug overdose. The forfeiture doctrine did not apply because there was no causal link between the defendant's misconduct and the witness's unavailability.[40]

In sum, the majority of post-*Crawford* cases have applied the forfeiture by wrongdoing doctrine when the trial court makes a preliminary finding under Rule 104(a) [41] that the defendant's act of misconduct caused the witness's unavailability, although some have also required that the defendant acted with the intent to prevent the witness's testimony.

## III.

■ The determination of whether the forfeiture doctrine applies in the present case appears, at first glance, to depend upon an interpretation of the scope of the "forfeiture by wrongdoing" doctrine. We have been favored with thorough briefing by both the State and appellant. The

State cites to the language in *Crawford* and in the law professors' amicus brief, and argues that the court of appeals correctly applied the forfeiture doctrine because forfeiture by wrongdoing, as an equitable doctrine, does not require the prosecution to establish the defendant's motive. Appellant, on the other hand, asserts that the doctrine cannot apply unless the State shows that the defendant engaged in the wrongdoing for the purpose of preventing the witness from testifying at a future trial. Appellant notes that pre-*Crawford*, the doctrine was generally applied only in the context of witness tampering, and that the Supreme Courts in Pennsylvania, Alaska, and New York had expressly held that the doctrine does not apply where the defendant murders the declarant for personal reasons rather than to prevent the declarant from testifying.[42] Appellant faults post-*Crawford* cases applying the doctrine as the court of appeals did in this case for fastening on language in *Crawford* and *Reynolds*, without sufficient analysis of the history and intent of the rule.[43]

As both parties noted in oral argument, cases expanding the doctrine have sprout-

---

the predicate misconduct triggering forfeiture and the crime alleged in the indictment are the same would ignore the presumption of innocence).

**39.** 362 Ill.App.3d 335, 299 Ill.Dec. 8, 841 N.E.2d 420 (2005).

**40.** *Id.* at 351–52, 299 Ill.Dec. 8, 841 N.E.2d 420 (noting that a causal link "between a defendant's actions and a witness's unavailability may be established where (1) a defendant puts forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure; (2) a defendant physically prevents a witness from testifying; or (3) a defendant actively facilitates the carrying out of the witness's independent intent not to testify.") (quoting *Commonwealth v. Edwards*, 444 Mass. 526, 541, 830 N.E.2d 158, 171 (2005)). The court held that, absent a

causal link between the defendant's wrongful act and the unavailability of the witness, the Confrontation Clause bars the use of the declarant's testimonial hearsay. *Id.* at 355, 299 Ill.Dec. 8, 841 N.E.2d 420.

**41.** *See* Tex.R. Evid 104(a). That provision states,

(a) *Questions of Admissibility Generally.*— Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

**42.** Appellant's Brief at 21.

**43.** *Id.* at 28.

ed up after *Crawford,* even though *Crawford* itself did not elaborate on the parameters of the doctrine it "accepted." The State argues that "[i]f it is true that forfeiture should only apply when the accused specifically intends that the witness be made unavailable when he engages in the wrongful conduct, the [Supreme] Court could have easily said so. Certainly the Court was aware of authority for this proposition but chose not to mention forfeiture with this limiting language."[44]

We need not settle that dispute in this case. An examination of the entire record clearly supports the inference that appellant shot the Herreras to silence them. They knew him. They lived across the street from his grandmother and were friends with her and other members of her family. Appellant entered the Herreras' home without a disguise and with a very distinguishing characteristic—his dark hair dyed blonde. Indeed, there was no sign of forced entry, so he was either welcomed or walked through an unlocked door. Appellant entered the Herreras' home armed. And he shot to kill. Baldomero, who had not even gotten up from his easy chair, was shot through the heart. Maria was also shot in the chest—and when she did not die appellant shot her again and again. Both were shot from beyond two feet. Both were left for dead.

A logical inference is that appellant killed the Herreras because he wanted to steal their truck and their money, and he didn't want any witnesses to his crime—especially witnesses that knew him, and knew where to find him.[45] This case is factually different from the post-*Crawford* cases that the court of appeals relied on. Those cases involved passion or revenge killings—killings for personal reasons.[46] There was no evidence in this case that appellant had any personal grudge against the Herreras; the evidence strongly supports the inference that appellant committed burglary or robbery for financial gain and then murdered the two witnesses who could identify him.

■■■■ We agree with those post-*Crawford* cases and the *Crawford* amicus brief that the doctrine of forfeiture by wrongdoing may apply even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable. The trial court in this case did not make a preliminary ruling on whether appellant killed Maria, at least in part, to prevent her from testifying against him because this case was tried before *Crawford* was decided.[47] Nonethe-

---

44. State's Brief at 27.

45. *See, e.g., Yates v. Evatt,* 500 U.S. 391, 409, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991) ("An examination of the entire record reveals that, as to Willie Wood, there was clear evidence of Davis' intent to kill: Instead of leaving the store when he could have, Davis pursued Wood with a deadly weapon in his hand and attacked Wood by jumping on his back. This evidence was enhanced by the fact that Davis had at least two reasons to kill Wood. He could have thought it necessary to avoid being himself killed or injured by Wood, and he also could have thought it necessary to avoid being identified by Wood to the police.").

46. *Meeks* was a fight that escalated to a shooting, and *Giles* and *Moore* were both domestic-violence cases. See notes 35–37 *supra.*

47. We note that appellate courts may infer from the record evidence that the defendant intended to prevent a witness or victim from identifying or testifying against him even when the trial court has not made such a finding explicit when, as here, an intervening change in the law requires the appellate court to make a decision on the forfeiture doctrine without the benefit of the trial court having done so. *See State v. Romero,* 139 N.M. 386, 133 P.3d 842 (N.M.Ct.App.2006), *cert. granted,* 139 N.M. 429, 134 P.3d 120 (April 10, 2006).

less, an evidentiary ruling, such as the one admitting Maria's out-of-court statements, will be upheld on appeal if it is correct on any theory of law that finds support in the record.[48] We agree with the court of appeals that the record provides ample support for the admission of Maria's out-of-court statements, despite appellant's Confrontation Clause objection, because appellant forfeited his right to confront Maria by his own wrongful act. The evidence strongly suggests that procurement of Maria's absence was motivated, at least in part, by appellant's desire to permanently silence her and prevent her from identifying him. We express no opinion on the court of appeals's broader holding that the procurement of a witness's absence need not be motivated by a desire to silence the declarant for the forfeiture by wrongdoing doctrine to apply.

We affirm the judgment of the court of appeals.

JOHNSON, J., filed a concurring opinion.

We reject appellant's claim that the trial court cannot make a preliminary finding of fact, under Rule 104(a), that the defendant committed the very act of murder for which he is on trial in determining the applicability of the doctrine of forfeiture by wrongdoing. Similar preliminary rulings on an ultimate issue are frequently made in conspiracy cases when a trial judge determines whether certain statements are admissible as a co-conspirator statement. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (trial court makes preliminary determination, by a preponderance of the evidence, under Fed.R.Evid. 104(a) that a conspiracy existed and that the defendant was a part of that conspiracy, before co-conspirator statements may be admitted into evidence); *see also Huddleston v. United States*, 485 U.S. 681, 687 n. 5, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Several pre- and post-*Crawford* cases have cited Rule 104(a) as the proper mechanism for the trial court to use in deciding whether the forfeiture doctrine applies in a particular case. *See United States v.*

JOHNSON, J., filed a concurring opinion.

I concur in the judgment of the Court. First, I think that Mrs. Herrera's statements were admissible as a dying declaration. Despite the police officers' assertions that she was not aware of the gravity of her situation, no one seems to have inquired of her what her perception of her injuries was. Certainly she was aware that she had been shot multiple times, including a gunshot wound to the abdomen. Under such circumstances, it is probable that she understood quite clearly the gravity of her situation. The *Crawford* Court conceded that dying declarations may, by historical imperative, be admissible, despite the lack of an opportunity to cross-examine.[1]

There is also the argument that Mrs. Herrera's statements were not testimonial. Depending on the circumstances, a police officer asking, "What happened?" may or may not be interrogation. Even if her

*White*, 116 F.3d 903, 914 (D.C.Cir.1997); *Mayhew*, 380 F.Supp.2d at 968; *People v. Jones*, —— Mich.App. ——, ——, 2006 Mich. App. LEXIS 586 *10–13 (Mich.App.2006).

48. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex. Crim.App.1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990) ("If the trial judge's decision is correct on any theory of law applicable to the case ... it will be sustained").

1. "The one deviation we have found is dying declarations. The existence of that exception as a general rule of criminal hearsay law cannot be disputed.... Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are.... We need not decide in this case whether the *Sixth Amendment* incorporates an exception for testimonial dying declaration. If this exception must be accepted on historical grounds, it is *sui generis*." *Crawford*, at 56 n. 6, 124 S.Ct. 1354.

statements were testimonial and the trial court erred in admitting them, I would find the error harmless. The Herreras' truck was missing, a fact easily ascertained from sources other than Mrs. Herrera's statements. The license plate number was also easily ascertainable by law officers. A bulletin about the missing truck was broadcast to police officers. An officer on routine patrol saw the truck and called for assistance. After a chase, officers stopped the truck and arrested appellant, the driver, who had Mr. Herrera's credit cards in his pocket and Mrs. Herrera's blood on his shoes. With such evidence, Mrs. Herrera's statements were superfluous.

I do not think that this is the right case in which to consider expanding the concept of forfeiture by wrongdoing. The basis for such an expansion seems to be based on federal Rule of Evidence 804(b)(4), which by its very terms does not apply in this case. In addition, there is a logical disconnect in saying that a defendant killed a person to prevent them from testifying at the defendant's trial for killing that person; if the defendant did not kill the person, there would be no murder trial and hence no need to suppress damaging testimony, so killing the person creates the reason for killing the person. Such reasoning is circular and should not be incorporated into the law.