

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00238-CR

JOHNNIE LEE THOMPSON,

                                    **Appellant**

 v.

THE STATE OF TEXAS,

                                    **Appellee**

---

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 15-00318-CRF-272

---

## MEMORANDUM OPINION

---

The jury convicted Johnnie Thompson of the offense of assault family violence.
The trial court found the enhancement paragraph to be true and assessed punishment at
thirteen years confinement. We affirm.

### Motion for Forfeiture by Wrongdoing

In the first issue on appeal, Appellant argues that the trial court erred in granting
the State's motion for forfeiture by wrongdoing. Prior to voir dire proceedings, the State

asked the trial court to issue a writ of attachment for Sol-Lisha Henderson, the complaining witness. The State informed the trial court that Henderson was subpoenaed to be there, but that she had not appeared. Henderson made numerous statements that she would not appear at trial. The State further informed the trial court that they were filing a motion for forfeiture by wrongdoing. The trial court granted the writ of attachment and indicated that there would be a hearing on the motion for forfeiture by wrongdoing after jury selection.

The Texas Code of Criminal Procedure provides that:

(a) A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

(1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

(2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

(b) Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing under this article, subject to Subsection (c).

(c) In determining the admissibility of the evidence or statements described by Subsection (b), the court shall determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. If practicable, the court shall make the determination under this subsection before trial using the procedures under Article 28.01 of this code and Rule 104, Texas Rules of Evidence.

(d) The party offering the evidence or statements described by Subsection (b) is not required to show that:

(1) the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability;

(2) the actions of the actor constituted a criminal offense;  or

(3) any statements offered are reliable.

TEX. CODE CRIM. PROC. ANN. art. 38.49 (West Supp. 2016).

The Texarkana Court of Appeals addressed Article 38.49 in *Shepherd v. State* and stated that we review the trial court's decision to admit or exclude evidence for abuse of discretion.  *Shepherd v. State*, 489 S.W.3d 559, 572 (Tex.App. – Texarkana 2016, pet. ref'd). A trial court abuses its discretion only when its decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.  *Id*.

In a criminal prosecution, a defendant has a Sixth Amendment right to be confronted with the witnesses against him.   *Giles v. California*, 554 U.S. 353, 357-58, 128 S.Ct. 2678, 171L.Ed.2d 488 (2008); *Gonzalez v. State*, 195 S.W.3d 114, 116 (Tex.Crim.App.2006); *Shepherd v. State*, 489 S.W.3d at 573.  Even if a hearsay statement offered against the defendant may be otherwise admissible under the Rules of Evidence, the Confrontation Clause may be implicated if the defendant has not had the opportunity to confront the out-of-court declarant.  *Gonzalez v. State*, 195 S.W.3d at 116; *Shepherd v. State*, 489 S.W.3d at 573.  However, declarations made by a declarant whose unavailability

the defendant procured may be admitted as an exception even though the defendant did not have an opportunity to confront the declarant. *Shepherd v. State*, 489 S.W.3d at 573.

Under forfeiture by wrongdoing, the defendant is barred from asserting his right of confrontation when he has wrongfully procured the unavailability of the witness. *Id.* Under *Giles*, this exception applies only "when the defendant engaged in conduct designed to prevent the witness from testifying." *Giles*, 554 U.S. at 359, 128 S.Ct. 2678; *Shepherd v. State*, 489 S.W.3d at 573. Further, the United States Supreme Court requires that there must be some showing by the proponent of the statement that the defendant intended to prevent the witness from testifying. *Giles*, 554 U.S. at 361-62, 128 S.Ct. 2678; *Shepherd v. State*, 489 S.W.3d at 573. However, forfeiture by wrongdoing applies even when the defendant has multiple reasons for harming the witness, as long as one of the reasons is to prevent her from testifying. *Shepherd v. State*, 489 S.W.3d at 573. Forfeiture by wrongdoing may apply "even though the act with which the accused is charged is the same as the one by which he allegedly rendered the witness unavailable." *Gonzalez v. State*, 195 S.W.3d at 125; *Shepherd v. State*, 489 S.W.3d at 573.

The trial court held a hearing outside the presence of the jury on the State's motion for forfeiture by wrongdoing. At the hearing, Angela Thomas, an investigator for the District Attorney's office, testified that when served with the subpoena to appear at trial, Henderson stated that she did not want to testify. Henderson said that she had "done some legal research, and she realized if she came in to testify, all of her statements would

be brought in." Thomas stated that the Brazos County jail records indicate Appellant called Henderson from the jail 79 times between June 1, 2015 and the start of trial on June 20, 2015. Appellant called Henderson seven times between June 19 and the start of trial on June 20. Appellant also used another inmate's ID to call Henderson. Thomas testified that after the trial court issued the writ of attachment, she tried to locate Henderson at her residence, at her mother's residence, at Appellant's family residence, and at Henderson's former place of employment. Henderson's mother told Thomas that Henderson was not in Bryan and that they would not find her.

At the hearing, the State presented evidence of numerous incidents where the police responded to domestic disturbance calls concerning Henderson and Appellant. On January 2, 2015, the police responded to the assault call that resulted in the present conviction. Henderson called 9-1-1 and reported that Appellant choked her and tried to kill her. The SWAT team was called to take Appellant into custody. After Appellant's arrest, Henderson signed a non-prosecution affidavit.

On March 24, 2015, Henderson met with the prosecutor and victim assistance coordinator and said that she wanted a protective order. Henderson stated that now she wanted to press charges, that there were two new incidences of violence between her and Appellant, and that she was afraid she would end up dead. Henderson stated that Appellant told her, "If I go back to jail, you're going to die." The State filed a motion to increase Appellant's bond and impose bond conditions, but Henderson did not show up

to testify at the hearing. Henderson told the assistant district attorney that Appellant texted her from the courtroom and told her not to come.

On June 20, 2016, the trial court issued the writ of attachment for Henderson because she failed to appear for trial. That same day, Appellant called Henderson from jail using the phone provided by the jail for inmates. Appellant, however, used another inmate's ID to make the call. Appellant and Henderson had the following conversation:

Appellant: That's why I was saying I was gonna call you off another phone. I was gonna let you know, you better watch out staying at home. You know what I'm saying, you know cause you being at home, they gonna try and get you at the house. I'm telling you, they want you bad. …

Henderson: They want me bad?

Appellant: Baby I'm just letting you know. If your truck is parked outside, they going to wait outside for you. In the morning or whatever they gonna get you. Cause I'm telling you the DA and them wants your ass, they was talking … that's all they kept saying was we need to bring Sol-isha in.

Henderson: Really?!

Appellant: I'm telling you, you think this is a God d-mn game. I couldn't really; I couldn't say it on my phone because my phone, that phone is under my name. … But I'm trying to tell you, you got your car parked out there you might as well, they gonna be sitting out there waiting for you, I'm telling you. They gon be waiting on you, to leave or something. If they knock on that door you better not answer that door.

Henderson: But baby, you don't know where I'm at.
…
Appellant: Yeah I'm telling you! They put out a warrant for your arrest. I had to go into the God d-mn, the judge's office before I even went in the courtroom. I was sitting in that God d-mn room and they issued, they granted a warrant for you. And they said go apprehend your ass right now.

My trials gon last four days, you just have to wait four days and you won't have to worry about it. If you can run for four days, until Thursday, they gon have to probably dismiss my case or something. But I couldn't tell you that, that's why I had to try to play it off, play it off. You feel me?

Henderson: Are you f-cking serious? That's how bad they want me?
…
Appellant: They gon get you, without you there aint no case. I'm telling you they gon get you.

Henderson: No they not. *laughing*

Appellant: I'm telling you, they catch you at that house, and if you have anybody go get clothes for you or whatever, make sure that ain't nobody following them or nothing. I'm trying to tell you what's up.
…
Appellant: They catch your ass coming up out that house you remember, they gon book your ass, cause you got a warrant for your arrest. Pending, and if you go to work, you better hope you work out of town or something. Or you better put somebody on game and let them know that you aint at work at that time, cause they know you go back to work Wednesday.
…
Appellant: You feel me? You just got to be cautious how you come and go. You gotta watch your surroundings when you go to work and everything.
…
Appellant: Cause they started my trial today. They need you in there that's why my court date is set back at 2 cause they gon try to press issue on getting you by tonight. And then by morning try to catch your ass in the morning time coming up out of that house. If you anywhere, at your mamas house, anything … my judge… my lawyer say, do you know where she be taking the kids to? And I just thought, what you gon try to do take the kids, and them make her give in or some sh-t?
…
Henderson: That's what they trying to do.

Appellant: I'm telling you … I'm telling you, that's what they trying to do, they trying to get the kids, and see if they take the kids, but they don't have no warrant for the kids, so they can't make you, they can't do that. You feel

me? They got a warrant for your arrest, so they can't take the kids but they might try. …

Appellant argues that in *Shepherd* the Texarkana Court of Appeals did not discuss the causal requirement contained in Article 38.49. Appellant contends that Article 38.49 requires "evidence that through Appellant's particular care and effort, the wrongful act or acts caused the absence of complainant as a witness." Appellant argues that the evidence does not show that Henderson's failure to appear was caused by his conduct.

Article 38.49 states that a party to a criminal case who "wrongfully procures" the unavailability of a witness forfeits the right to object to the admissibility of evidence based on the unavailability of the witness. Citing *Giles*, the Texarkana court stated that 38.49 applies when the defendant engaged in conduct designed to prevent the witness from testifying and that there must be a showing that the defendant intended to prevent the witness from testifying. *Shepherd v. State*, 489 S.W.3d at 573. We agree with the analysis of the Texarkana court in *Shepherd*.

The record shows that Appellant assaulted Henderson on numerous occasions. Appellant threatened to kill Henderson if he went back to jail. Appellant texted Henderson from a cell phone and told her not to appear at the bond hearing, and she did not appear at that hearing. Appellant called Henderson the day before the trial and told her to leave town until his trial was over. The trial court did not abuse its discretion in finding by a preponderance of the evidence that Appellant wrongfully procured the

unavailability of Henderson.  The record supports a finding that Appellant engaged in conduct intended to prevent Henderson from testifying.  We overrule the first issue.

**Sentencing**

In the second issue, Appellant argues that the sentence should be reformed to reflect an eight year sentence rather than the thirteen year sentence stated in the judgment.  When pronouncing the sentence, the trial court stated:

> All right, sir.  Your sentence is thirteen years in the penitentiary, eight years for the crime and five years for lying to everybody.  Total of thirteen.  You are hereby sentenced to thirteen years in the Texas Department of Criminal Justice Institutional Division.

Appellant contends that the trial court was unambiguous in pronouncing eight years for the charged offense.  Appellant asks this Court to reform the judgment to reflect a sentence of eight years.

The trial court was authorized to consider Appellant's character, the circumstances of the offense, and the evidence of extraneous offenses in assessing punishment.  TEX. CODE CRIM. PROC ANN. art. 37.07 Sec. 3 (a) (1) (West Supp. 2016).  The trial court clearly stated that the sentence was thirteen years while noting he considered Appellant's truthfulness in assessing the sentence.  We overrule the second issue.

**Conclusion**

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed July 26, 2017
Do not publish
[CR25]

