

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-18-00151-CR

LANE HUGH BROWN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1440468D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Lane Hugh Brown pleaded guilty to manslaughter, and a jury assessed punishment of ten years' confinement. In two issues, Brown argues that the trial court erred by excluding punishment evidence (1) of the victim's postmortem toxicology report and (2) that the victim had been seen in

---

[1]*See* Tex. R. App. P. 47.4.

possession of a marijuana pipe on the night before her death. Brown argues that both items of evidence were relevant to Brown's motive for engaging in the behavior that led to the victim's death. We will affirm.

## II. BACKGROUND

On June 13, 2015, Brown was driving a motorcycle on U.S. Highway 81 in Wise County. The victim, Meagan Hays, was riding on the back of the motorcycle. A Department of Public Safety trooper observed Brown speeding and pulled him over.

In the video from the trooper's dashboard camera, as soon as Brown brought the motorcycle to a stop, Hays appears to unbuckle her helmet and start to remove it. But just a few seconds after stopping, Brown sped back into traffic. In the video, Brown's sudden action appears to surprise Hays, who releases her grip on the helmet and grabs Brown's shoulder to maintain her balance.

A high-speed pursuit ensued. Brown left the highway for a two-lane road, ran a red light, and reached speeds that DPS troopers estimated to be in excess of 100 miles per hour. Brown then crashed into the back of a car that had pulled to the shoulder to yield to the sirens and lights of the trooper's approaching patrol car.

The collision threw Hays ninety-six feet, and she died at the scene. Brown sustained severe injuries. He testified that he had no memory of the accident and the events leading up to it. At the time of the accident, Hays was wearing a backpack containing Brown's high-school diploma and birth certificate, two cell

2

phones (one of which belonged to Hays), a bag of what appeared to be marijuana, and a pink pipe containing what appeared to be marijuana residue.

A grand jury indicted Brown for murder; the indictment included a deadly-weapon notice. Brown entered an open plea of guilty to manslaughter and a deadly-weapon finding.

At the jury trial on punishment, the State's theory was that Hays was an unwilling participant in Brown's flight from police. The State presented evidence that Hays did not like motorcycles, did not like going fast, and was not a thrill seeker. Two DPS troopers opined that Hays did not expect Brown to flee from the initial traffic stop because the dashcam video appears to show her beginning to remove her helmet as soon as the motorcycle came to a stop.

Brown's theory was that the marijuana and pipe belonged to Hays and that Hays urged him to flee from the initial traffic stop. Brown presented evidence that he and Hays attended a party at Brown's residence the night before the crash. Hays declined another guest's offer of a ride home, choosing instead to let Brown drive her home on his motorcycle.

Brown offered a postmortem toxicology report showing marijuana in Hays's system and testimony that Hays was seen at the party with the marijuana pipe. The State objected, and the trial court excluded the evidence as irrelevant.

The jury assessed punishment at ten years' confinement. The trial court rendered judgment accordingly, and this appeal followed.

### III. DISCUSSION

In two issues, Brown argues the trial court erred by excluding his proffered evidence about the toxicology report and Hays's possessing the marijuana pipe at the party the night before the crash. Because Brown's issues rely on similar facts and identical law, we will address them together.

#### A.  Preservation of Error

The State argues that Brown failed to preserve his complaint for review because his argument on appeal as to why the evidence is admissible does not comport with his argument in the trial court. We disagree.

A complaint on appeal must comport with the complaint made in the trial court or the error is forfeited. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). In the trial court, Brown argued that the evidence about the pipe and the marijuana in Hays's system was relevant because it tended to show that she owned the pipe and the marijuana and therefore not only knew that Brown was attempting to evade apprehension but encouraged the attempt. On appeal, Brown argues that "[i]f the jurors had known that the marijuana and the marijuana pipe in the backpack probably belonged to [Hays], they would have viewed [Brown's] motive and actions more leniently" and that "evidence tending to show that [Hays] had her own motive for avoiding an encounter with police was certainly relevant to the jury's assessment of [Brown's] degree of culpability for her death." The gist of Brown's argument both at trial and on appeal is that the evidence is relevant as to why Brown acted the way he did. Therefore, his

4

argument on appeal comports with his argument at trial. *See id.* We hold that Brown preserved his complaint for our review. *See* Tex. R. App. P. 33.1(a)(1).

## B.    Standard of Review

We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *See Jenkins v. State*, 493 S.W.3d 583, 607 (Tex. Crim. App. 2016). A trial judge's decision is an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1024 (2006).

## C.    The Trial Court Did Not Abuse Its Discretion

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. Crim. App. 1991) (op. on reh'g) (citing Tex. R. Evid. 401). At the punishment phase of trial, "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2017).

The court of criminal appeals has noted that "admissibility of evidence at the punishment phase of a non-capital felony offense is a function of policy rather than relevance." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006) (citing *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988)

5

(plurality op. on reh'g)). This is true because "by and large there are no discreet factual issues at the punishment stage. There are simply no distinct 'facts . . . of consequence' that proffered evidence can be said to make more or less likely to exist." *Id.* (quoting *Miller-El v. State*, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990)).

Apart from Article 37.07, § 3(a), "the Legislature has not set a coherent policy to guide courts in discerning what evidence is appropriate to the punishment deliberation." *Miller-El*, 782 S.W.2d at 896. Moving to fill that policy void, the court of criminal appeals has declared that "subject to limitations imposed by [art. 37.07, § 3(a)], evidence of 'the circumstances of the offense itself or . . . the defendant himself' will be admissible at the punishment phase." *Id.* (quoting *Murphy*, 777 S.W.2d at 63). Thus, determining what is relevant at the punishment phase of a non-capital felony offense is "a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez*, 203 S.W.3d at 842 (Tex. Crim. App. 2006) (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)).

Brown argues that the excluded evidence was relevant to show that Hays, not Brown, owned the marijuana and the pipe. Brown further argues that the excluded evidence suggests that his attempt to evade apprehension "may have been motivated by the more chivalrous—though admittedly misguided—notion of trying to protect [Hays] rather than merely himself." Brown speculates that Hays might have said something to him about the marijuana and pipe, which prompted

6

Brown's attempt to flee. Finally, Brown suggests that the excluded evidence shows that *Hays* had a motive for evading police and therefore shared culpability for her own death:

> [E]vidence tending to show that [Hays] had her own motive for avoiding an encounter with police was certainly relevant to the jury's assessment of [Brown's] degree of culpability for her death— especially in light of the State's contention that [Hays] was entirely innocent of any wrongdoing and therefore that the whole weight of responsibility for her death must fall on [Brown].

We disagree with Brown's relevancy arguments for three reasons. First, and most importantly, Brown's entire argument hinges on the premise that he fled police to avoid discovery of the marijuana and pipe. But nothing in the record supports this premise. There is no evidence that Brown knew the contraband was in the backpack. Assuming for the sake of argument that he did know, there is no evidence that he fled to prevent police from discovering the marijuana and pipe. Brown might have fled for some completely unrelated reason. The only person who knew Brown's motive—Brown himself—cannot remember fleeing from the police, much less his motive for doing so. Thus, whether the marijuana and pipe had anything to do with Brown's flight and Hays's death is nothing more than speculation.

Second, even assuming for the sake of argument that a reasonable juror could conclude that Brown's motive for fleeing from police was to prevent the marijuana's discovery, whether Brown or Hays owned the marijuana is irrelevant.

7

Brown's motive and his culpability remain the same regardless of who actually owned the marijuana and pipe.

Third, even if Hays did own the marijuana and pipe, her ownership does not shift culpability for the high-speed flight and Hays's death from Brown to Hays. Brown was in sole control of the motorcycle. Brown chose to lead police on a high-speed pursuit. And Brown crashed the motorcycle, killing Hays. Brown speculates that Hays might have communicated to him her desire to evade police, but nothing in the record supports this speculation. Thus, we disagree with Brown's assertion that "evidence tending to show that [Hays] had her own motive for avoiding an encounter with police was certainly relevant to the jury's assessment of [Brown's] degree of culpability for her death." There is no evidence Hays communicated any such motive to Brown or that he was acting on Hays's supposed motive when he fled from police.

In summary, Brown's attempt to show that the excluded evidence would be helpful to the jury in assessing punishment is based on nothing more than speculation—speculation that Brown knew the marijuana and pipe were in the backpack, speculation that Brown fled from police because he knew the marijuana and pipe were in the backpack, and speculation that Hays communicated to Brown a desire to flee from police because of the marijuana and pipe in the backpack. We cannot say that the trial court's decision to exclude Hays's toxicology report and testimony that Hays was seen with the marijuana pipe falls outside the zone of reasonable disagreement. *See*

8

*Winegarner*, 235 S.W.3d at 790. We therefore hold that the trial court did not abuse its discretion by excluding the evidence. *See Jenkins*, 493 S.W.3d at 607. We overrule both of Brown's issues.

## IV. CONCLUSION

Having overruled both of Brown's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: MEIER, KERR, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 7, 2018