# NO. 12-11-00312-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANTHONY MARES,*<br>*APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Anthony Mares was convicted by a jury of the offense of aggravated robbery. On remand from the court of criminal appeals for a new trial on punishment only, Appellant was sentenced to imprisonment for fifty-eight years and a fine of $5,000. Appellant raises two issues on appeal. We affirm.

### BACKGROUND

An Anderson County grand jury indicted Appellant for the offense of aggravated robbery, committed on or about January 9, 1998. The indictment alleged that during the course of the robbery, Appellant caused bodily injury to Yin-Lu Yao "by shooting him with a Firearm." Appellant pleaded "not guilty" to the offense, but before the trial was held, Yao died due to "cardiovascular damage." Ultimately, a jury found Appellant guilty of aggravated robbery, but there is no indication from the jury's verdict whether Appellant was found guilty of shooting Yao as a principal or as a party.[1] We affirmed Appellant's conviction on appeal.[2]

---

[1] The charge of the court identified Jessica Whitlock as an accomplice and instructed the jury that it could not convict Appellant unless it believed her testimony and other evidence "tend[ed] to connect" Appellant with the crime.

[2] *See **Mares v. State***, No. 12-99-00278-CR, slip. op. (Tex. App.—Tyler Mar. 31, 2000, no pet.) (not designated for publication).

Subsequently, Appellant filed a petition for writ of habeas corpus in which he alleged that the State violated his right to due process by failing to disclose a statement made by the victim in 1998 to the then-sitting district attorney. *See Ex parte Mares*, No. AP-76219, 2010 WL 2006771, at *2 (Tex. Crim. App. May 19, 2010) (not designated for publication). The court of criminal appeals determined that the State's failure to disclose the statement amounted to a *Brady* violation and remanded the case for a new trial on punishment. *See id.* at *4; *see generally Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

After a new trial on punishment, a jury assessed punishment at fifty-eight years of imprisonment and a $5,000 fine. This appeal followed.

## MEANINGFUL AND COMPLETE DEFENSE

Appellant presents two issues on appeal relating to the trial court's exclusion of a statement made by the victim, Yin Lu Yao (Yao), to the then-sitting district attorney, Jeff Herrington. In his first issue, Appellant contends that the trial court violated the United States Constitution by denying him the opportunity to present a meaningful and complete defense when it refused to allow Yao's potentially exculpatory statement to be presented to the jury.

### Constitutional Guarantees

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment[,] the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532, 81 L. Ed. 2d 413 (1984)).

Rulemakers have broad latitude to constitutionally establish rules excluding evidence from criminal trials, but their authority to establish such rules is not unlimited. *See Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731, 164 L. Ed. 2d 503 (2006); *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264, 140 L. Ed. 2d 413 (1998); *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). Evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve'" are unconstitutional. *See Scheffer*, 523 U.S. at 308, 118 S. Ct. at 1264 (citations omitted); *Potier*, 68 S.W.3d at 659-60. Thus, the constitutional right to a "meaningful opportunity to present a complete defense" is qualified by the requirement that the defendant's

2

evidence be relevant and not excluded by an established evidentiary rule. ***Davis v. State***, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010).

There is no constitutional right to present favorable evidence in any form a defendant desires, and the right to a meaningful and complete defense is not violated every time a rule excludes favorable evidence. *See **Scheffer***, 523 U.S. at 316-17, 118 S. Ct. at 1268-69; ***Potier***, 68 S.W.3d at 659. The hearsay doctrine is one such rule and is designed to exclude out-of-court statements offered for their truth that pose any of the four hearsay dangers of "faulty perception, faulty memory, accidental miscommunication, or insincerity." ***Fischer v. State***, 252 S.W.3d 375, 378 (Tex. Crim. App. 2008).[3] A statement that qualifies as hearsay but does not fall under one of the exceptions provided by the rules of evidence or other statutory authority is inadmissible. *See* TEX. R. EVID. 802. Generally, the rule requiring the exclusion of hearsay is not arbitrary or disproportionate to its purpose because the rule prevents the admission of statements that are regarded as inherently unreliable. *See **id.***; ***State v. Kaiser***, 822 S.W.2d 697, 700 (Tex. App.—Fort Worth 1991, writ ref'd).

## Exclusion of Evidence

"[E]videntiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." ***Potier***, 68 S.W.3d at 663. But the improper exclusion of evidence may establish a constitutional violation (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court erroneously excludes relevant evidence that is a vital portion of the case and the exclusion effectively precludes the defendant from presenting a defense. ***Ray v. State***, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). In the first category, the constitutional infirmity is in the arbitrary rule of evidence itself. ***Hammer v. State***, 296 S.W.3d 555, 561 n.8 (Tex. Crim. App. 2009). In the second category, the evidentiary rule itself is appropriate, but the trial court erroneously applies it to exclude admissible evidence to such an extent that it effectively prevents the defendant from presenting his defensive theory. ***Id.***

The exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of his case that exclusion effectively precludes the defendant from presenting a defense. *See **Potier***, 68 S.W.3d at 665. If a defendant is not prevented from

---

[3] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d).

presenting the substance of his defense to the jury, the court will not find error. *Id.* at 666. We review a trial court's decision to admit or exclude evidence for abuse of discretion. *See **Tillman v. State***, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

## Discussion

Appellant sought to introduce a statement made to the then-sitting district attorney by the victim purporting to identify Appellant's co-defendant, Jessica Whitlock (now French), as the shooter. Appellant was unaware of the statement when he was originally tried in 1999. It was not until several years after Yao died and Appellant was found guilty that he learned of the statement. It was this ***Brady*** violation that prompted the court of criminal appeals to grant Appellant a new trial on punishment. *See **Ex parte Mares***, 2010 WL 2006771, at *3-4.

Appellant contends that because the statement was not disclosed until several years after it was taken and after the victim had died, he was unable to present the exculpatory evidence in any other admissible form. Had the State timely provided the statement, Appellant contends, he "could have interviewed Mr. Yao and perhaps obtained a signed statement that memorialized what he told Herrington." Appellant argues further that he "could have also petitioned the trial court to allow him to take Mr. Yao's deposition, thereby preserving the evidence in admissible form if Mr. Yao became unavailable to testify, as he did." Thus, Appellant argues that the hearsay rule is arbitrary and capricious as applied in this case.

1. *The Evidence*

During Appellant's new trial on punishment, the State presented testimony from a variety of witnesses including the case investigator, L.H. Marrs; the victim's wife, Su Chen Yao; Appellant's co-defendant, Jessica Whitlock; and Appellant's ex-girlfriend, Melissa Redfern (now Elrod). The evidence showed that Appellant and his then-girlfriend, Jessica Whitlock, robbed Chang's Chinese Restaurant on January 9, 1998.

Marrs testified that during his investigation, he obtained a statement from Whitlock in which she told him that Appellant shot Yao. Marrs believed that Appellant was the shooter. Marrs explained that the weapon used to shoot Yao was a "single action weapon," requiring a certain amount of strength to pull the "slide" back in order to put a round into the gun's chamber. Marrs then testified that his investigation revealed that Appellant had previously fired the weapon, but there was no information that Whitlock had ever fired it. He explained further that it would have taken "a substantial amount of strength" to bring the slide of the gun to a full

4

backward motion to cause the gun to function properly and he did not believe that Whitlock possessed the strength or dexterity to do so. Marrs's investigation included an interview of the victim's wife, Su Chen Yao (Su Chen), in which she described the gunman as being shorter than she was, but said she did not see who shot her husband. Although Su Chen's precise height was never stated, Marrs confirmed that she is "a very short woman."

Su Chen did not testify at the new punishment trial, but her testimony from Appellant's original trial was read to the jury.[4] Su Chen testified that a person wearing a mask and carrying a gun entered the restaurant and demanded money. She also testified that she heard a man's voice, "speak loudly[,']I want money.[']" Su Chen screamed when the gunman entered the restaurant and Yao came out of the kitchen. The gunman pointed the gun at Yao, but then ran away, with Yao in close pursuit. Su Chen ran outside to see what happened and found her husband lying on the ground bleeding, but not speaking.

Appellant's co-defendant, Jessica Whitlock, also testified during the new trial on punishment. Whitlock testified that approximately one week before the robbery, she went with Appellant to a park where he shot the gun that was used during the robbery. She also testified that while they were at the park, Appellant never showed her how to use the gun, nor did she fire the gun. In describing the events leading up to the robbery, Whitlock testified that she had lied in her testimony at Appellant's original trial. She stated that her testimony in 1999 that Appellant was the individual wielding the gun inside the restaurant was untrue. In 1999, Whitlock also stated that it was her idea to rob the restaurant, but she recanted that testimony during the new trial on punishment. Whitlock explained that she lied as an effort to gain a favorable plea bargain from the State. Whitlock's charge was reduced from aggravated robbery to robbery and she was placed on shock probation. However, Whitlock failed to successfully complete the conditions of her probation and served a prison sentence for the robbery.

Whitlock testified that she took "the mask and gloves . . . as well as the gun" from Appellant and went inside the restaurant. Whitlock confirmed that this was contrary to her testimony in the original trial. She also testified that once Yao came out of the kitchen, they were "almost face to face," and that she was "probably just as scared as he was." Whitlock tried

---

[4] Appellant agreed to the reading of Su Chen's testimony.

to cock the gun, but did not have the strength, and when she realized that, she ran away.[5] When she exited the restaurant, Appellant was waiting at the corner and she handed him the gun and "kept running." As she was running away, Whitlock heard a gunshot, but did not personally see Appellant shoot Yao. Whitlock adamantly denied shooting Yao, which was consistent with prior statements she had made regarding the incident.

The State's last witness was Melissa Redfern, one of Appellant's ex-girlfriends. Prior to the robbery, Redfern and Appellant ended their relationship, and Appellant wrote her a letter apologizing for the breakup. In the letter, Appellant talked about a woman named "Leanne," and explained that she was easy access to "good free meth, and I wanted my revenge." He also wrote as follows:

> I had talked to her once and she said she had a dream that I was only being nice to her so that she would trust me, and then I could kill her. I was going to make that dream come true. It's sad what I now know I'm capable of doing. Some would say that I couldn't do it, but there is one who knows that I would. Let me tell you about it. You probably don't want to know this because it has to do with Leanne, but it tells about my state of mind, also. When we stayed with you and Tina, Leanne and I went to Dallas. I believe I told you that much, and on the way there, this lady was walking down the access road and I wanted to kill her just to see what it felt like. I kept driving past her and turning around to go back, and then I finally stopped and picked her up. . . . When I stopped, she got out and ran off. Needless to say, I was mad about it, and I stayed mad for a few hours. This is all true, sad, and scary when you think about it because this is me, Anthony.

The State rested at the conclusion of Redfern's testimony.

2. *Appellant's Bill of Exception*

In a pretrial hearing, the trial court ruled that it would not allow testimony from the former district attorney regarding a statement that Yao made to him. As a result, Appellant submitted a bill of exception in which he contended that if the trial court had allowed him to call Jeff Herrington as a witness, Herrington would have testified that while he was serving as Anderson County District Attorney in 1998, he traveled to Houston and interviewed Yao about the robbery. Appellant also stated that Herrington

> would further testify that Mr. Yao told him the person who shot him was unfamiliar with the use of a gun, and the person who shot him was clearly the shorter of the two persons he encountered

---

[5] Marrs's testimony revealed that a live bullet was found inside the restaurant. On direct examination, Whitlock testified that she was not paying attention when she tried to pull the slide back and the bullet somehow came out of the gun. She testified that she was "not able to cock [the gun]," and that the bullet found on the floor inside the restaurant was not caused by her "pull[ing] the trigger on Mr. Yao."

that night[, and that] Mr. Herrington would further testify that he formed the opinion that Jessica Whitlock, not Mr. Mares, is the person who shot Mr. Yao, based on his interview with Mr. Yao.[6]

Appellant offered Whitlock's and Appellant's book-in sheets, which showed Whitlock's height as 5'2" and Appellant's height as 5'10." Appellant then asked the court to take judicial notice of the written stipulation filed in January 2009, which contained the same facts as Appellant's recitation to the trial court.

At the conclusion of Appellant's bill, the State offered State's Exhibit E, which was the witness statement Investigator Marrs had obtained from Yao on March 4, 1998. The statement provides in relevant part as follows:

> I saw a masked man stealing some money[.] I was behind the buffet table. I could not tell if it was a man or woman because he was wearing a mask. The person was little taller than I am; I am five foot six inches. I could not tell much about the weight. As soon as I got the buffet table the gunman come to the front of the counter away from the register. I told the person don't take the money or something like that; I think I said Money! Money! Like that. The gunman pointed the gun at me. The person did not say anything and ran out of the door. I ran after the gunman. I chased the gunman out and onto the sidewalk and we turned to my right. The gunman goes around the corner and I chased. I turned the corner and I tripped and fell. I saw the one I was chasing. I was trying to get up and as I began to get up I saw another masked person about ten to fifteen feet behind the person I was chasing. The second person and the person I was chasing had stopped running. Both were wearing dark clothes but I am not sure of the color. When I ran around the corner I saw the guy standing at the back door of the restaurant by the steps and the other one was [illegible] the alley way. I fell and the guy by the steps shot me as I was in process of getting to my feet.

3. *Analysis*

Both parties agree, as do we, that Yao's statement is hearsay. Thus, we are concerned with whether Yao's statement was a "vital portion" of Appellant's case and whether its exclusion effectively prevented Appellant from presenting a defense. *See Crane*, 476 U.S. at 690, 106 S. Ct. at 2146; *Ray*, 178 S.W.3d at 835. Appellant directs our attention to the Supreme Court's rulings in *Chambers v. Mississippi* and *Green v. Georgia* to support his contention that the application of the hearsay rule in this instance is unconstitutional. *See generally Chambers v.*

---

[6] Herrington believed Whitlock was the shooter because she is significantly shorter than Appellant and testified that she had never fired the weapon previously. Herrington, however, did not note his belief in the file or share the information with Appellant's attorney. Shortly thereafter, Herrington was replaced as district attorney by Doug Lowe. Lowe reviewed the file and concluded that Appellant shot Yao. Because it was not noted in the file, Lowe did not know of Herrington's interview with Yao, and therefore did not inform Appellant's attorney of it.

*Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *Green v. Georgia*, 442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979).

In *Chambers*, a murder defendant called a witness who had previously confessed to the murder. *Chambers*, 410 U.S. at 291, 93 S. Ct. at 1044. When the witness repudiated the confession, the defendant was prohibited from impeaching the witness's testimony with the prior confession because of the state's voucher rule, which barred parties from impeaching their own witnesses. *Id.*, 410 U.S. at 291, 93 S. Ct. at 1044. The defendant also was prohibited from presenting the testimony of three other witnesses who had heard the first witness make self-incriminating statements because the state's hearsay rules did not include an exception for statements against penal interest. *Id.*, 410 U.S. at 292-93, 93 S. Ct. at 1044-45. The Supreme Court held that the combined effect of the state's voucher rule and hearsay rule denied the defendant a trial "in accord with traditional and fundamental standards of due process." *Id.*, 410 U.S. at 302, 93 S. Ct. at 1049. The Court further stated that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Id.*, 410 U.S. at 302, 93 S. Ct. at 1049.

In *Green*, the defendant was indicted for rape and murder along with a second defendant, but Green and his co-defendant were tried separately. *Green*, 442 U.S. at 95, 99 S. Ct. at 2151. Green sought to introduce testimony from a witness who had testified at his co-defendant's trial that Green's co-defendant had admitted to murdering the victim outside of Green's presence. *Id.*, 442 U.S. at 96, 99 S. Ct. at 2151. The trial court excluded the witness's testimony, ruling that it was hearsay and inadmissible because the state rules did not include an exception for statements against penal interest. *Id.*, 442 U.S. at 96 n.1, 99 S. Ct. at 2151 n.1. The Supreme Court held that the evidence was "highly relevant to a critical issue" in the punishment of the defendant and substantial reasons existed to assume its reliability. *Id.*, 442 U.S. at 97, 99 S. Ct. 2151. Thus, the Supreme Court held that the defendant had been denied a fair trial. *Id.*, 442 U.S. at 97, 99 S. Ct. 2152, 60 L. Ed. 2d 738.

In both *Chambers* and *Green*, the Supreme Court emphasized the reliability of the excluded statements. The statements were (1) made spontaneously to close acquaintances shortly after the murder occurred, (2) corroborated by other evidence, (3) direct, and (4) self-incriminatory. *See Chambers*, 410 U.S. 292-93, 93 S. Ct. at 1044-45; *Green*, 442 U.S. at 97, 99 S. Ct. 2151-52. Similar assurances of reliability are not present here. *See Fuller v. State*, 829 S.W.2d 191, 208 (Tex. Crim. App. 1992). Yao's statement was not spontaneous, but was the

8

result of an interview conducted by Herrington at an unknown time and under unknown circumstances.[7] Yao's statement is not corroborated, does not directly identify Whitlock as the shooter, and is not self-incriminatory. *See Chambers*, 410 U.S. at 292-93, 93 S. Ct. at 1044-45; *Green*, 42 U.S. at 97, 99 S. Ct. at 2152. Other factors showing a lack of reliability in Yao's statement to Herrington include that (1) Yao spoke English poorly, (2) Yao experienced a difficult recovery from his injuries arising out of the robbery and a later automobile accident, (3) in a March 4, 1998 interview, Yao told Marrs the shooter was taller than he (Yao) was, and (4) Herrington would be testifying in court about a statement Yao made to him more than ten years ago. *See Fisher*, 252 S.W.3d at 378 (dangers of hearsay include faulty perception and memory, accidental miscommunication, and insincerity).

Moreover, unlike *Chambers* and *Green*, the exclusion of Yao's statement did not prevent Appellant from presenting his defense, nor did the exclusion of the statement "significantly undermine fundamental elements" of Appellant's defense. *See Potier*, 68 S.W.3d at 666. The excluded evidence in *Chambers* and *Green* provided direct evidence of the shooter's identity and therefore of the defendant's innocence. *See generally Chambers*, 410 U.S. 284, 93 S. Ct. 1038; *Green*, 442 U.S. 95, 99 S. Ct. 2150. In this case, however, the State presented no direct evidence of the shooter's identity.

Although Investigator Marrs testified that he believed Appellant was the shooter, the jury was free to disregard Marrs's opinion. Marrs's opinion was based on the fact that Whitlock did not have the strength, ability, or knowledge to correctly fire the gun used during the robbery. But Whitlock testified that she was the individual who entered the restaurant with the gun where live ammunition was found, that she was familiar with the concept of how to operate a gun, and that she went with Appellant to the park when he practiced shooting the gun. Whitlock had also admitted to lying about the events surrounding the robbery on prior occasions in an effort to curry favor with the State. Specifically, Whitlock testified that when she realized that she could stand trial as an adult, "[her] story changed."

Appellant's defense was that he was not the individual who shot Yao during the robbery. Due to Whitlock's history of untruthfulness, the jury could have believed that Whitlock had the ability and knowledge to operate the gun during the robbery. The jury could have also

_____

[7] From the record, we know that the conversation occurred in Houston sometime in 1998. However, we do not know the month the conversation occurred or Yao's medical condition during the conversation.

9

disbelieved Whitlock's testimony that she never pulled the trigger when pointing the gun at Yao. Had Yao's statement to Herrington been admitted, Whitlock's credibility would still have been at issue because Yao's statement to Marrs identified both individuals as wearing masks (Whitlock testified that she "took the mask" from Appellant before entering the restaurant) there was only one mask) and that the "second person" he saw was the person who shot him. At best, Yao's statements to Herrington and Marrs were inconclusive as they related to the shooter's identity. Yao's statement did not form such a vital portion of Appellant's case that he was effectively precluded from presenting a defense. *See Potier*, 68 S.W.3d at 665. Furthermore, the exclusion of Yao's statement did not prevent Appellant from presenting the substance of his defense to the jury—that Whitlock, not Appellant, shot Yao. *See id.*, 68 S.W.3d at 666. The trial court did not abuse its discretion in excluding Yao's statement. *See Tillman*, 354 S.W.3d at 435. Accordingly, we overrule Appellant's first issue.

### STATE'S RIGHT TO OBJECT TO EXCULPATORY EVIDENCE

In his second issue, Appellant contends that the State should not be allowed to violate *Brady* and then "hide behind the hearsay rule to prevent the admissibility of [the] exculpatory evidence it failed to disclose." Appellant argues that the doctrine of forfeiture by wrongdoing prevents the State from objecting to the admission of Yao's hearsay statement.

## Forfeiture by Wrongdoing

The doctrine of forfeiture by wrongdoing is an equitable exception to the Confrontation Clause of the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 62, 124 S. Ct. 1354, 1370, 158 L. Ed. 2d 177 (2004); *Reynolds v. United States*, 98 U.S. 145, 158, 25 L. Ed. 244 (1879). The Confrontation Clause bars the admission of testimonial statements of witnesses who do not appear at trial, unless they are unavailable to testify and the defendant had a prior opportunity for cross-examination. *Kelly v. State*, 321 S.W.3d 583, 603 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citations omitted). Thus, under the forfeiture by wrongdoing doctrine, the party "cannot complain if competent evidence is admitted to supply the place of that which he has kept away" if a witness is absent by that party's own wrongful procurement. *Reynolds*, 98 U.S. at 158.

Forfeiture by wrongdoing is based on the principle that "any tampering with a witness should once [and] for all estop the tamperer from making any objection based on the results of

his own chicanery." *Gonzalez v. State*, 195 S.W.3d 114, 117 (Tex. Crim. App. 2006) (citations omitted). The doctrine has been applied to allow out-of-court statements into evidence when the witness was made unavailable by a party's intimidation, bribery, or violence. *See id.* at 118. A party establishes the other party's forfeiture by wrongdoing when it demonstrates (1) the declarant's unavailability (2) as a result of the opposing party's act of misconduct. *Id.* at 120.

**Discussion**

Appellant's contention that the doctrine of forfeiture by wrongdoing is applicable to the State is misplaced. The Confrontation Clause is a protection afforded to defendants at trial, not the state. *See* U.S. CONST. amend. VI. Thus, exceptions to the Confrontation Clause apply only to defendants. *See id.* Appellant has not cited any authority, nor have we been able to locate any, for imposing the forfeiture by wrongdoing doctrine upon the State.

Even if we assume that the doctrine can be applied against the State, the State's conduct in this case does not result in forfeiture by wrongdoing. To establish forfeiture by wrongdoing, Appellant would have had to demonstrate that Yao's unavailability was the result of the State's misconduct. This he did not do.

Yao died due to "cardiovascular damage." According to the record, Yao was in good health before being shot during the robbery. While recovering from his gunshot wound, he was involved in an automobile accident. Yao's health quickly deteriorated, and he died on September 16, 1998. None of Yao's injuries were inflicted by the State.

"Every rule of evidence works a hardship on some litigants part of the time, and it is easy to sympathize with the frustration of any party whose most promising strategy turns out to be objectionable under the law." *Fuller*, 829 S.W.2d at 207. But the courts "are not at liberty to relieve every such disappointment with an *ad hoc* suspension of the Rules." *Id.* We understand Appellant's argument that the State should not be permitted to hide behind the hearsay rule after violating *Brady* as an argument relating to the fundamental fairness of his trial. But Appellant has not cited any instances in which the state was prevented from objecting to the admissibility of evidence because it had previously committed a *Brady* violation. And we have found no authority to support such a proposition.

In *Cook v. State*, the court of criminal appeals addressed "whether prosecutorial misconduct, magnified by the passage of over fourteen years and the death of a key witness, can so degrade the normal workings of justice that a fair trial becomes impossible and thus retrial is

11

forbidden under due process and due course of law principles." ***Cook v. State***, 940 S.W.2d 623, 625 (Tex. Crim. App. 1996). In that case, the record showed that prosecutorial and police misconduct "tainted [the] entire matter from the outset," causing the defendant to be subjected to three separate trials. *Id.* at 627. When Cook appealed after his third trial, the evidence showed that the State used testimony from a deceased witness whose testimony at trial contradicted his testimony before the grand jury and a statement that he made to police. *Id.* The court concluded that use of the deceased witness's testimony at trial cast serious doubt as to the fairness and reliability of the appellant's third trial. *Id.* As a result, the court reversed the appellant's conviction and remanded for a fourth trial. *Id.* The court also held that the State would not be permitted to use any of the aforementioned prior testimony at retrial. *Id.* at 628. The court reasoned that any statements or testimony from the deceased witness were tainted by the State's prior misconduct, which could not be corrected by cross-examination or other means and that due process and fundamental fairness precluded the use of that witness's statements in any retrial. *See id.* In remanding the case, the court acknowledged that the passage of time plus the State's misconduct "may well complicate appellant's construction of a defense," but stated that the record did not support that the construction of a defense would be impossible, even at such a later date. *Id.*

We have considered the facts of this case in light of the egregiousness of the misconduct in ***Cook*** and the court's determination that Cook could still receive a fair trial despite the exclusion of a deceased witness's testimony on retrial. Having done so, we conclude that the State's ability to object to the admissibility of Yao's statement did not render Appellant's trial unfair. *See id.* Here, the State did not introduce any statement made by Yao, and if it had, Appellant would have been entitled to impeach that evidence with Yao's statement to Herrington. *See* TEX. R. EVID. 806. Moreover, Appellant was able to present the substance of his defense by cross-examination of the State's witnesses. *See **Potier***, 68 S.W.3d at 666. Consequently, Appellant was not deprived of the opportunity to present a defense in this case and was not deprived of a fair trial because of the State's hearsay objection. The trial court properly declined Appellant's invitation to apply the forfeiture by wrongdoing doctrine against the State under the facts of this case. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered September 25, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 25, 2013**

**NO. 12-11-00312-CR**

**ANTHONY MARES,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 3rd Judicial District Court

of Anderson County, Texas (Tr.Ct.No. 24573)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*