

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00293-CR

**JOSE MANUEL GONZALEZ,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2016-666-C1**

## MEMORANDUM OPINION

C.S., the child victim of both continuous sexual abuse and indecency, as charged in this case, shot and killed herself the day after she received a subpoena to testify at Appellant's trial; she was fourteen years old.

The jury found Appellant guilty on each count of the two-count indictment in this case. On the first count, continuous sexual abuse of a young child, the jury assessed Appellant's punishment at confinement for life. It assessed Appellant's punishment on

the second count of the indictment, indecency with a child by contact, at confinement for twenty years; it also imposed a fine of $10,000. The trial court ordered that the sentences were to be served consecutively. We affirm.

Because C.S. was not available to testify at trial, and because the trial court believed that her absence was due to Appellant's wrongdoing, the trial court admitted prior statements that C.S. had made to others. That is the subject of Appellant's first issue on appeal: "The trial court violated Gonzalez's right to confrontation as guaranteed by the Sixth Amendment and Article 1, Section 10 by granting the State's Motion for Forfeiture by Wrongdoing and Admitting multiple pieces of physical evidence and testimony about the prior statements of [C.S.]."

In Appellant's second issue on appeal, he asserts that the trial court erred when it denied his unsworn motion for continuance.

There is no challenge to the sufficiency of the evidence except as it relates to the elements that must be shown to allow for admissibility under the doctrine of forfeiture by wrongdoing. Therefore, we need not detail the evidence except for context and except as it goes to the issue of the trial court's admission of C.S.'s prior statements.

"In all criminal prosecutions, the accused has a Sixth Amendment right to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Gonzales v. State*, 195 S.W.3d 114, 116 (Tex. Crim. App. 2006). The Texas Constitution contains a like provision. TEX. CONST., art. 1, § 10.

The doctrine of forfeiture by wrongdoing is an equitable exception to confrontation claims. *Gonzales v. State*, 195 S.W.3d at 117. The doctrine substantially conforms to the requirements set forth in *Giles v. California*, 554 U.S. 353 (2008); *Shepherd v State*, 489 S.W.3d 559, 574 (Tex. App.—Texarkana 2016, pet. ref'd). The exception has been codified in Texas and that codification is, in relevant part, as follows:

(a) A party to a criminal case who wrongfully procures the unavailability of a witness or prospective witness:

(1) may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence and testimony; and

(2) forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness as provided by this article through forfeiture by wrongdoing.

(b) Evidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness or prospective witness are admissible and may be used by the offering party to make a showing of forfeiture by wrongdoing under this article, subject to Subsection (c).

(c) In determining the admissibility of the evidence or statements described by Subsection (b), the court shall determine, out of the presence of the jury, whether forfeiture by wrongdoing occurred by a preponderance of the evidence. If practicable, the court shall make the determination under this subsection before trial using the procedures under Article 28.01 of this code and Rule 104, Texas Rules of Evidence.

(d) The party offering the evidence or statements described by Subsection (b) is not required to show that:

> (1) the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability;
>
> (2) the actions of the actor constituted a criminal offense; or
>
> (3) any statements offered are reliable.

TEX. CODE CRIM. PROC. ANN., art. 38.49 (West).

A decision as to whether to admit evidence is a matter within the trial court's discretion and the decision will not be reversed in the absence of an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537–38 (Tex. Crim. App. 2002). If there is evidence to support the trial court's decision to admit evidence, there is no abuse of discretion, and we must defer to that decision. *Id.* at 538.

Prior to trial, the State filed a motion in which it asked the trial court to determine the admissibility of certain statements made by C.S. to others. The trial court conducted a hearing on that motion.

Dr. Soo Battle, a board-certified pediatrician employed by the Advocacy Center for Crime Victims and Children, testified at the hearing. Dr. Battle examined C.S. on February 8, 2016. In addition to her testimony, Dr Battle's written report was admitted into evidence.

At the time of the examination, C.S. was in the seventh grade. C.S. lived with her mother and her half-brother; Appellant was the half-brother's father. Appellant had lived with C.S., C.S.'s mother, and C.S.'s half-brother until about four weeks before the

examination.  He moved out when the sexual abuse was disclosed.  When Appellant moved out, he took various firearms with him.

C.S. told Dr. Battle that, "[Appellant] was raping me."  She also told Dr. Battle that, "He was doing stuff that I didn't like sexually."  C.S. detailed those things to Dr. Battle. Appellant told C.S. that he would hurt her if "I didn't do it."  The sexual abuse started when C.S. was eight years old.

Around the time that the sexual abuse started, C.S. began taking Melatonin for sleep difficulties.  C.S. also underwent counseling for her sleep problems.  At times, C.S. had nightmares about the incidents.  She also showed symptoms of depression that were manifested by her cutting herself on her arm and stomach.  The cutting incidents began when Appellant began hitting her.  C.S. displayed symptoms typically associated with sexual abuse.

Appellant punished C.S. "a lot" by taking away her phone, spanking her with a belt, by hitting her, and by cutting her on her knees.  Dr. Battle saw the scars.  At the time of Dr. Battle's exam, C.S. was afraid that Appellant might try to kill her.

Britni Hosick, a social worker at the Advocacy Center, had numerous sessions with C.S.  At the first meeting, C.S. was very anxious but did not want to disclose the source of her anxiety.  Later, she revealed that source: Appellant had been released from jail and she was concerned that he might hurt her or her mother.  C.S. was also afraid for

her little brother. Additionally, she was anxious about an upcoming court date and her having to face Appellant.

On January 20, 2016, Heydi McKinney, a bilingual forensic interviewer at the Advocacy Center, conducted a forensic interview with C.S. C.S. was reluctant to talk about what had happened to her. She told McKinney that Appellant yelled at her "a lot" and that she was scared of him; she was also in fear for others. Appellant had told C.S. not to tell her mother. McKinney believed that C.S.'s reluctance to talk to her was because C.S. took Appellant's warning to mean that she was not to tell anyone.

Clara Santos, C.S.'s mother, testified that she and Appellant were married for five years and had a son together. Appellant was over-protective of his son, but he picked on C.S. C.S. had told Santos earlier that Appellant was abusing her, but Appellant convinced Santos that C.S. was lying because C.S. did not like him. Later, Santos personally found out about the abuse when she walked into C.S.'s room and saw that "this man was on her."

Santos also knew that Appellant had hit C.S. to keep her from telling anyone about the abuse. Santos had seen the bruises on C.S's legs. C.S. had begged Santos not to make her testify. C.S. was terrified to face Appellant in court because of what he had done to her from the time that she was eight until she was twelve years old.

Dr. William Lee Carter, a psychologist with expertise in the field of sexual abuse of children, testified that suicidal ideation and self-abuse is "quite common and directly

tied to the pain associated with sexual abuse." Cutting is common and related to sexual abuse. Perpetrators of sexual abuse will use sexual abuse to satisfy their desires but will also engage in other behavior as a means to keep their victim under their control. An abuser might take advantage of an imbalance in the relationship between an adult and a child—as well as direct threats—to ensure that the abuse is never disclosed.

When C.S. was subpoenaed, "all the facts that she is living under, the helplessness she is living with, the gloom and doom she experiences, those things are coming to fruition and she would see that now we're not talking in abstract, we're talking in reality, and the weight of that burden can be such that she thinks, 'I can't do it. I can't go there." According to Dr. Carter, when C.S. received the subpoena, that was her inflection point and prompted her to take her own life.

Dr. Carter testified that, based upon the sexual abuse in this case and Appellant's repeated actions of emotional, physical, and sexual abuse, it could be strongly implied that it was Appellant's intention that C.S. never disclose what happened to her. Dr. Carter opined that there was "little question that [C.S.'s] offender, if it's true that he offended her, had every intention of buying her silence."

Appellant denied that he ever did more than discipline C.S.. He maintains that the evidence that we have outlined is insufficient to show that the forfeiture by wrongdoing doctrine allows for the admission of C.S.'s statements to others.

In support of his argument, Appellant relies upon *Brown v. State*, 618 S.W.3d 352 (Tex. Crim. App. 2021). There, the alleged victim of family violence did not show up for trial. The defendant had earlier told the officer who was trying to locate the victim that he did not know where she was. Later, when an officer went to the same address to serve a subpoena on the victim, she answered the door. She slammed the door in the officer's face when she discovered his purpose. Apparently, she was living with the defendant at the time and the defendant had lied about not knowing where she was. The evidence showed that he committed the family violence offense charged in the case and that he had previously committed family violence against the same victim.

On appeal, Brown claimed that the State had failed to prove by a preponderance of the evidence that he procured the victim's unavailability to testify at trial. When the case reached the Texas Court of Criminal Appeals, a majority of the court agreed with him. The Court held that any connection between Brown's acts and the victim's failure to appear at trial was pure speculation. *Id.* at 359. The Court noted that there was no evidence that Brown did anything to influence the victim not to appear. *Id.*

The case before us is quite different. Appellant had exerted his will over C.S. from the time that she was eight years old until she was twelve. He had spanked her with a belt, hit her, left bruises on her legs, cut her knees, continuously sexually abused her for years, and threatened to hurt her and her mother if she ever told. The professionals who testified all agreed that C.S. had every reason to believe Appellant's threats.

Furthermore, as we have noted, Dr. Carter's opinion was that Appellant's actions indicated that it was Appellant's intent that C.S. never disclose what had happened to her. In Dr. Carter's expert opinion, there was "little question that her offender, if it's true that he offended her, had every intention of buying her silence."

We hold that the evidence was sufficient to show by a preponderance of the evidence that Appellant wrongfully procured C.S.'s unavailability to testify, and that he intended to and did procure her unavailability as a witness. The State was not required to prove that that was the sole intent behind Appellant's actions. *See* TEX. CODE CRIM. PROC. ANN., art. 38.49 (d) (1) (West). The trial court did not abuse its discretion when it admitted C.S.'s out of court statements. We overrule Appellant's first issue on appeal.

In his second issue on appeal, Appellant maintains that the trial court abused its discretion when it denied his unsworn motion for continuance. Appellant contends that the trial court erred because its denial of his motion for continuance resulted in a denial of his rights to due process and effective assistance of counsel. We disagree.

The State asserts that Appellant waived his complaint regarding the trial court's denial of his motion for continuance because the motion was not sworn to by anyone. We agree with the State's contention. Article 29.08 of the Texas Code of Criminal Procedure provides that "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08 (West).

An unsworn motion for continuance preserves nothing for review. *See Dewberry v. State*, 4 S.W.3d 735, 754–55 (Tex. Crim. App. 1999) (To be preserved for appeal, a motion for continuance must be in writing and sworn to.). There is no due process exception to this requirement. *See Blackshear v. State*, 385 S. W.3d 589, 591 (Tex. Crim. App. 2012). We know of no authority to the contrary, and have been directed to none when the claim is one of effective assistance of counsel. Appellant did not preserve error on his complaint about the trial court's denial of his motion for continuance. We overrule Appellant's second issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
    Justice Smith, and
    Justice Wright[1]
Affirmed
Opinion delivered and filed January 12, 2022
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.